# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**SARAH C.,**
**Respondent Below, Petitioner**

**FILED**
**February 2, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-100** (Fam. Ct. Kanawha Cnty. No. 20-D-361)

**JOSHUA M.**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Sarah C.[1] appeals the order of the Family Court of Kanawha County, West Virginia entered on August 17, 2022. Respondent Joshua M. filed a timely response.[2] Sarah C. did not file a reply. The issue presented for our consideration is whether the family court erred in denying Petitioner Sarah C.'s petition to modify custody without holding a hearing and without affording her an opportunity to present evidence.[3]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the family court's decision is reversed, and this case is remanded for further proceedings consistent with this decision.

The parties had two children when they were living in Indiana. When they separated, their son, M.M. (now eleven years old), was two years old, and their daughter, R.M. (now nine years old), was 3 months old. In December of 2013, Sarah C. and the children moved to West Virginia, where she had family, while Joshua M. remained in Indiana. Joshua M.

---

[1] This Court's use of initials is necessary to protect the identities of those involved in this case. See W.Va. R. App. P. 40.

[2] Petitioner is represented by Rosalee Juba-Plumley, Esq. Respondent is represented by Timothy A. Bradford, Esq.

[3] Petitioner also filed a motion to reconsider which was denied by the lower court without holding a hearing. We briefly stayed our proceedings on appeal until a written order denying the motion to reconsider was entered below. We do not address the merits of the lower court's denial of the motion to reconsider in this opinion.

rarely (perhaps once a year) saw the children between 2013, when the couple separated, and May of 2020, when he filed a Petition for Allocation of Custodial Responsibility.[4] During this period of time, he did not pay any child support for the children, although his obligation was initially set at only $17 a week for his son, and nothing for his daughter.

Over the next two years, the family court held several hearings and made several rulings in connection with this petition. Joshua M. was initially granted visitation only in West Virginia, but these visits were later extended to include Indiana. In an effort to resolve their remaining issues, the parties engaged in mediation. Although the parties reached an agreement during mediation, Sarah C. withdrew from their agreement before it was adopted by the family court.[5] A guardian ad litem was also appointed by the court to investigate the situation and make recommendations about parenting. On August 31, 2021, the children began seeing a therapist. On February 1 and 8, 2022, the court heard testimony from both parties and the guardian ad litem.[6]

On March 2, 2022, the family court entered its Final Order Regarding Petition for Allocation of Custodial Responsibility. This order granted Joshua M. reasonable telephone communication with the children and visitation during long weekends, spring break, Thanksgiving, Christmas, and summers. During the summer of 2022, Joshua M. was awarded visitation from June 3 to June 17, July 1 to July 15, and July 29 to August 29, 2022.

On August 4, 2022, Sarah C. filed a petition for modification and contempt, alleging that the custody plan needed to be modified on the grounds that there had been a change in circumstances, that the plan was not working, and that the plan was harmful to the children.[7] She also sought an order of contempt because Joshua M. allegedly had not been paying child support. In her petition, Sarah C. asserted that the children's therapist recommended that visits stop until Joshua M. participated in reunification therapy with the

---

[4] According to Sarah C., Joshua M. showed little interest in visiting the children until she asked him to relinquish his parental rights in 2018.

[5] Under Rule 43(c) of the Rules of Practice and Procedure for Family Court, a mediation agreement has no legal effect until it has been adopted by the court. Syl., *Mason v. Mason*, 216 W. Va. 328, 607 S.E. 2d 434 (2004); *Rader v. Fink,* No. 20-0889, 2022 WL 203035 (W. Va. Jan. 24, 2022)(memorandum decision). Prior to adoption by the court, either party may withdraw.

[6] The hearing which began on February 2, 2022, was adjourned when a medical emergency occurred and continued until February 8, 2022, when it concluded.

[7] Specifically, Sarah C. asked that visitation stop until Joshua M. had participated in reunification therapy and the therapist believed that the visits should resume.

children. She also alleged that the children reported a lack of food and water at Joshua M.'s house, and that visitations were miserable and were not helping to establish a good relationship between Joshua M. and the children. In support of her petition to modify, Sarah C. attached letters from the children's therapist dated May 11, 2022, and June 7, 2022, which were based on twenty therapy sessions conducted from August 31, 2021, to May 9, 2022.

The therapist's letter of May 11, 2022, concerning the son stated in pertinent part that:

> During the last session [on May 9, 2022], he [the son] disclosed that [he] feels unsafe visiting his dad. He stated that he hasn't felt safe talking about his dad because he's afraid his dad will find out what he says. He reported that his dad often yells and cusses. He added that once his dad hit an object in front of him out of anger. He stated that his dad doesn't allow him to bring his clothes from home. He expressed his desire for more quality time and how he feels that he doesn't know his dad.
>
> Due to these recent disclosures, I recommend that visitations stop at this point. I also recommend that [the son], his sister, and the dad begin reunification therapy. Once reunification therapy is completed, I recommend revisiting the discussion of visitation.

The therapist's letter of May 11, 2022, concerning the daughter noted that she had attended twenty scheduled therapy sessions with the last one on May 9, 2022. This letter stated in pertinent part:

> The main stressor in [the daughter's] life remains seeing her dad. She reported that during punishments he often yells and cusses. She added that once her dad punched a wall and broke a clock when he was angry. She reported that overall, she feels unsafe at her dad's. She also reported that her dad's girlfriend drove her, and her brother intoxicated once. She discussed being grounded for calling her dad by his name instead of dad. She stated that her dad doesn't spend quality time with her, and she wishes he could spend more time with [her]. She added that she was scared her dad would take it out on her if she talked about how he acts during her visits.
>
> Due to these recent disclosures, I recommend that visitation stop at this point. I also recommend that [the son], his sister,

3

and dad begin reunification therapy. Once reunification therapy is completed, I recommend revisiting the discussion of visitation.

The therapist's letter of June 7, 2022, discussed both children and was similar in content to her letters of May 11, 2022. The therapist noted that "[d]uring a family session with her mother, [the daughter] … reported that her dad's girlfriend was drinking and proceeded to transport her and her brother." The letter concluded by saying that: "Due to these recent disclosures, I recommend that visitations continue once a month with the implementation of reunification therapy to assist [the son], [the daughter], and their father with learning better communication, boundaries, and de-escalation skills."

On August 17, 2022, without a hearing, the family court denied Sarah C.'s petition for modification, noting "[t]hat the letters written by the therapist cover many months BEFORE the hearing in February of 2022 and no testimony was given by the therapist during the February 22 hearing." (emphasis in original).[8] It also concluded that the petition had not been filed in good faith and that it was "another tactic to interfere with the father's parenting time and another attempt to alienate the children from him."[9] Accordingly, the court would "not entertain the petition and [would] not have a hearing on same." The family court then cancelled the hearing on the petition to modify which had been scheduled for September 22, 2022. Sarah C. appeals from the August 17, 2022, order denying her petition for modification.

---

[8] In its order, the family court rejected Sarah C.'s argument that there had been a change in circumstances since the hearing held in February of 2022, but did not specifically address the claims that the parenting plan was not working and that it would not be in the best interests of the children to continue to see their father without his participation in reunification therapy sessions.

[9] The order denying Sarah C.'s petition for modification does not identify what other tactics she allegedly employed "to interfere with the father's parenting time" and further "alienate the children from him," but the Final Order of March 2, 2022, indicates that Sarah C.'s words and actions made the children aware that she did not want them to have contact with Joshua M. and that the children knew too much about what was happening in court. The Order Granting Attorney Fees and Costs indicates that Sarah C. withdrew from a mediation agreement on the grounds of duress, requested the appointment of a guardian ad litem, and "engaged in … a tactic of parental alienation by allowing the children to call their fairly recent stepfather 'dad.'" The lower court also referred to "a clear intent on her part to deny the petitioner parenting time," noting that she had not allowed the children to visit their father in Indiana before he filed his petition for allocation of custody, and that she had cut short an "extended visitation with the father in summer 2021 upon determining that the court did not order the same."

4

When reviewing a family court order, this Court applies the following standard of review:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, No. 22-ICA-2, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17098574, at *3 (W. Va. Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

Sarah C. brought her petition to modify custody pursuant to West Virginia Code § 48-9-401 (a) and (b)(2022). Subsection (a) provides that:

> …a court shall modify a parenting plan if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

*Id*. Under this statute, in order to establish a change in circumstances sufficient to justify modifying a parenting plan, a party must establish three criteria: (a) that the facts relevant to the alleged change in circumstances were not "known" or "anticipated," (b) that the change regarding the child or one or both of the parents was substantial, and (c) that a modification of the plan is necessary in order to serve the best interests of the child. *Jared v. Molly*, 246 W. Va. 556, __, 874 S.E. 2d 358, 363 (2022). In determining whether changes were anticipated, the question is not whether they *could* have been anticipated, but whether they *were* in fact anticipated and provisions were already made for such potential changes in the parenting plan. *Skidmore v. Rogers*, 229 W. Va. 13, 21, 725 S.E.2d 182, 190 (2011). Subsection (b) provides that "[i]n exceptional circumstances, a court may modify a parenting plan if it finds that the plan is not working as contemplated and in some specific way is manifestly harmful to the child, even if a substantial change of circumstances has not occurred."

The family court was apparently frustrated by what it perceived to be delaying tactics on the part of Sarah C. The letters written by the therapist, however, raise significant

concerns,[10] and are not limited to the period before the hearing in February of 2022.[11] At least some of the issues raised in the letters, such as the respondent's girlfriend driving the children when she was intoxicated, do not appear to have been raised before. In addition, both of the children have reported, since February of 2022, that they do not feel safe at Joshua M.'s house, and that they are afraid that he will punish them if they talk about how he acts during visits, which are also new allegations. In her letters, the therapist recommended that the children and Joshua M. participate in reunification therapy to assist them in "learning better communication, boundaries, and de-escalation skills," a recommendation which was not made in the therapist letters that were submitted to the court in connection with its hearings in February of 2022.[12] The allegations in the petition to modify that the children reported a lack of food and water at Joshua M.'s house were also issues that were not addressed at the hearings held in February.

The family court was clearly wrong in finding that substantial changes in circumstances had not been alleged by the petitioner.[13] Moreover, the court abused its discretion when it denied the petition without holding a hearing, taking evidence, and making specific findings of fact and conclusions of law, because the allegations set forth in the petition, if established by the evidence, were sufficient to warrant reconsideration of

---

[10] Although the family court was skeptical of the motives of Sarah C., it did not question the findings and recommendations of the therapist. Its denial of the petition for modification seems to be based largely on its perception of Sarah C.'s intent based on her prior conduct.

[11] The therapy reports cover a period of time from August 31, 2021, to May 9, 2022, several months before and after the hearing in February of 2022.

[12] We note that the letters written by the therapist in May and June of 2022 cover significantly more therapy sessions than the letters dated November 10, 2021, that were submitted to the family court in connection with the hearings held in February of 2022. At the time when the first set of letters were written, the children had been to nine sessions. By May of 2022, they had been to twenty sessions.

[13] The family court did not address whether "exceptional circumstances" were established under West Virginia Code §48-9-401(b), a provision which allows modification of a parenting plan "even if a substantial change of circumstances has not occurred" although this subsection was quoted in the petition to modify. In particular, we note in this regard the allegation that the respondent's girlfriend had driven the children when she was intoxicated. The family court's failure to consider this issue in its order provides additional reason to reverse and remand for further proceedings.

the parenting plan.[14] For example, the allegation that the respondent's girlfriend drove the children when she was intoxicated, if established by competent evidence, might be sufficient in itself to constitute a substantial change in circumstances, or the type of "exceptional circumstances" contemplated by West Virginia Code § 48-9-401(b). *See T.H. v. D.K.*, 229 W. Va. 375, 380, 729 S.E.2d 210, 215 (2012) (allowing 12 year old to drive car while custodial mother was sitting in passenger seat after taking too much sleeping medication was a substantial change in circumstances). Taken together, all of the issues raised in the petition to modify certainly justified having a hearing. This is not a case where the petition to modify was frivolous on its face.

We express no opinion as to what the family court's ruling should be after providing the parties with a meaningful opportunity to present evidence.[15] We simply hold, given the circumstances, that the lower court was clearly wrong when it concluded that no new allegations had been made, that it should have considered whether "exceptional circumstances" were established under West Virginia Code § 48-9-401(b), and that it abused its discretion when it summarily denied the petition to modify without hearing evidence. If the family court holds a hearing and determines on the basis of the evidence presented that the petition to modify is not supported by the facts, it may act accordingly. We also note, however, that even if Sarah C. acted in bad faith in the past, that does not necessarily mean that the current petition to modify was filed in bad faith, or that it lacked merit.

On remand, petitioner should be given an opportunity to present evidence concerning the issues raised by her petition to modify. At the hearing, the parties may present evidence concerning events which may have occurred since the hearing in February of 2022, and since the petition to modify was filed on August 4, 2022.[16] This will give the family court

---

[14] Rule 21(a) of the West Virginia Rules of Practice and Procedure for Family Court provides that: "A party may file a petition for … modification of any order of the court. If grounds pled warrant a … modification hearing, the hearing shall take place within 45 days of the filing of a petition for … modification. If grounds pled do not warrant a hearing then the court shall enter a dismissal order within 20 days."

[15] As the court observed in *Heather M. v. Richard R.*, 242 W. Va. 464, 471, 836 S.E.2d 431, 438 (2019): "A court cannot presume to know the facts of a case, the character of a party, or the authority of a potential witness without having heard any evidence."

[16] The family court did contemplate that Sarah C. might want to have the court review visitation after the first summer, stating in paragraph 7 of its Final Order Regarding Petition For Allocation of Custodial Responsibility entered March 2, 2022, that "if the Respondent… believes that there is a legitimate reason… and can prove the same, then she can file a Petition for Modification in the spring of 2023 and request that this Court modify

an opportunity to address not just whether there has been a change of circumstances, but whether there are "exceptional circumstances" justifying a modification, whether the parenting plan is working, and whether it is in the best interests of the children to modify the present plan.

Accordingly, we reverse the family court's order of August 17, 2022, denying Sarah C.'s petition for modification and remand to the Family Court of Kanawha County, West Virginia for further proceedings consistent with this decision.

Reversed and Remanded.

**ISSUED:** February 2, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

the upcoming summer schedule." The family court did not preclude the filing of a petition for modification before spring of 2023, nor would it have had the authority to do so.